**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JUSTINE WHITE, as parent                         Civil No: 05-0526 (DWF/JJG)
and natural guardian of
JAMIE R. ALLBRIGHT, a minor,

                          Plaintiff,

v.                                                **REPORT AND**
                                                  **RECOMMENDATION**

JO ANNE B. BARNHART,
Commissioner of
Social Security,
                          Defendant.

---

JEANNE J. GRAHAM, United States Magistrate Judge.

Plaintiff Justine White seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied her application, filed on behalf of her minor son, for supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The parties have submitted cross motions for summary judgment. For the reasons set forth below, this Court recommends that the Commissioner's determinations regarding the absence of disability under the Act be affirmed, but that the case be remanded with an order that the Administrative Law Judge supplement his written decision to bring it into compliance with applicable regulations and policies.

I.      PROCEDURAL HISTORY

On October 22, 2001, Justine White protectively filed an application for supplemental income benefits on behalf of her minor son, Jamie R. Allbright, claiming he was disabled due to attention-deficit hyperactivity disorder and depression with possible mania, with a disability onset date of September 4, 2001.  (R. at 53-54, 60).  The Social Security Administration initially denied the application and again on reconsideration.  (R. at 23-26).   Following a timely request by Ms. White, a hearing before an Administrative Law Judge ("ALJ") took place on August 12, 2003.

Claimant, accompanied by his step-father, appeared and testified at the hearing. (R. at 292). Ms. White appeared and testified by telephone.  (Id.).  Claimant and Ms. White were represented by an attorney. (Id.).  A medical expert also appeared and testified before the ALJ (Id.).

The ALJ issued an unfavorable decision on October 24, 2003. (R. at 16-22).  In his decision, the ALJ employed the three-step sequential analysis required under 20 C.F.R. § 416.924 *et seq*.  The three-step sequential analysis is applied to determine whether a child is eligible for supplemental security income benefits on the basis of disability.  Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 854 (8th Cir. 2003).  First, the minor child cannot be gainfully employed. Id.; 20 C.F.R.  § 416.924(b).  If the child meets this threshold requirement and is not engaged in substantial gainful activity, the ALJ must next consider whether the child's impairment or combination of impairments is "severe."  Pepper, 342 F.3d at 854;  20 C.F.R. § 416.924(c).  If so, the ALJ determines whether the child's impairments meet, medically equal, or functionally equal an impairment listed in Appendix to Subpart P, Regulations 4.  Pepper, 342 F.3d at 854; 20 C.F.R. § 416.924(d). If they do, and if a twelve-month durational requirement is met, disability is established.  See Pepper, 342 F.3d at 854.

In step one of the analysis, the ALJ found no indication in the record that Claimant has ever

worked.  The ALJ thus determined that he was not engaged in substantial gainful activity at any time since

the alleged onset date of September 4, 2001. (R. at 17).  Next the ALJ found that the evidence in the

record, including the testimony of the medical expert at the hearing, demonstrated that Claimant has

"medically determined impairments best described as ADHD, mood disorder not otherwise specified and

marijuana dependence currently in partial remission," and that "these impairments alone or in combination

are 'severe' within the meaning of the Regulations." (Id.).

However, the ALJ then found that Claimant was not disabled at step three of the sequential

evaluation. (R. at 19).  First, the ALJ found that Claimant's limitations did not meet a listed impairment.

Then the ALJ concluded Claimant's impairment or combination of impairments did not medically equal in

severity the criteria for a listed impairment.  (Id.).  Finally, the ALJ considered whether Claimant had an

impairment that was functionally equivalent in severity to a listed impairment.  In finding that the Claimant

did not have an impairment or combination of impairments that functionally equals a listing, the ALJ stated

he had carefully considered the entire record including prior determinations by non-examining physicians

of the State Agency. (R. at 20).  The ALJ further indicated that he gave "controlling weight to the testimony

of the medical expert who was present at the hearing" in making his determination that Claimant does not

have an impairment or combination of impairments which functionally equals a listing. (Id.).  Accordingly,

the ALJ found no disability as defined in the Social Security Act and denied benefits.

Plaintiff Justine White, on behalf of her son, appealed the decision of the ALJ, and submitted

additional medical evidence to the Appeals Council.  (R. at 255, 256-289).  The Appeals Council denied

her request for review on January 7, 2005.  (R. at 7).  The decision of the ALJ therefore became the final

decision of the Commissioner. (Id.).  Plaintiff brings the instant civil action to this court for review of the

Commissioner's final decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     DISCUSSION

Plaintiff raises three objection to the Commissioner's decision: (1) the ALJ failed to consider as controlling the opinions of Claimant's treating psychiatrist and psychologist in determining whether any of Claimant's impairments functionally equaled any of the listings; (2) the ALJ erred by giving the non-treating testifying medical expert's testimony controlling weight in determining whether any of Claimant's impairments functionally equaled any of the listings; and (3) the ALJ's decision is not substantially supported by the evidence in the record.

### A.     Standard of Review

When reviewing the Commissioner's decision, the Court neither reweighs the evidence, nor reviews the factual record de novo. Flynn v. Chater, 107 F.3d 617, 620 (8th Cir. 1997). The scope of review is narrow; the Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. Collins v. Barnhart, 335 F.3d 726, 729 (8th Cir. 2003). In determining whether evidence is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is less than a preponderance, but enough that a reasonable mind might find adequate to support the ALJ's conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record supporting the Commissioner's conclusion, the Court cannot reverse merely because it would have decided the case differently. Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).

### B.        The ALJ's Consideration of the Treating Source Opinions

Plaintiff argues that the Commissioner committed legal error by failing to consider as controlling the

opinions of Claimant's treating psychiatrist, Dr. Bart Main, and treating psychologist, Dr. James Hawkins,

in determining whether any of Claimant's impairments functionally equaled any of the listings.  Respondent

argues that the ALJ reviewed the medical evidence and based on the inconsistencies therein reasonably

declined to accept the opinions of these doctors in making his determination of whether Claimant had an

impairment that was functionally equivalent in severity to a listed impairment.

### 1.  Legal Standard for Deference to Treating Physicians

A treating physician's opinion is typically entitled to substantial weight.   Dixon v. Barnhart, 353

F.3d 602, 606 (8th Cir. 2003); see also 20 C.F.R. § 416.927(d)(2).  A treating physician's opinion is given

"controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence.  Goff v. Barnhart, 421 F.3d 785, 790

(8th Cir. 2005) (citations omitted).

When other substantial evidence in the record conflicts with the treating physician's opinion, that

opinion will not be deemed controlling.  Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000).  The less

consistent that opinion is with the record as a whole, the less weight it will be given.  See 20 C.F.R. §

416.927(d)(4).  The opinion of a consulting physician who examines a claimant once or not at all does not

generally constitute substantial evidence.  Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999) quoting

Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998).  An ALJ may not accord a treating physician's

opinion controlling weight based solely on the physician's status as the treating physician.  Prosch v. Apfel,

201 F.3d 1010, 1013-14 (8th Cir. 2000).

Finally, an ALJ is not required to assign special weight to the source of an opinion when making

final determinations reserved to the Commissioner, 20 C.F.R. § 416.927(e), such as whether a Claimant

meets the criteria of the Listing of Impairments.  That means that the Social Security Administration

considers the data that physicians provide but draws its own conclusions as to whether those data indicate

disability.  A treating physician's statement that the a claimant is disabled cannot itself be determinative.

Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir.1991).

### 2.    Determination of Whether Functional Impairment(s) Equals A Listing

Plaintiff's challenges to the ALJ's findings focus on the ALJ's determination that Claimant's

impairments or combination of impairments did not functionally equal a listing.  In order to make such a

determination, the ALJ must assess the claimant's limitations in six broad areas of functioning called

"domains." These six broad areas of functioning are: (1) acquiring and using information; (2) attending and

completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5)

caring for yourself; and (6) health and physical well-being.  Garrett v. Barnhart, 366 F.3d 643, 651 (8th

Cir. 2004) citing 20 C.F.R. § 416.926a(g)-(l).  To be found disabled by virtue of suffering from a

"functionally equal" impairment, a minor claimant must be found to have a "marked" impairment in at least

two functional domains, or to have "extreme" limitation in one functional domain.  Id. at 650 citing 20

C.F.R. § 416.926a(a).[1]

The ALJ concluding that the Claimant had no limitations in three of these functional domains:

---

[1]A "marked" limitation is described in the regulations as one that is more than moderate but less
than severe.  A marked limitation interferes seriously with a claimant's ability to independently sustain or
complete activities.  20 C.F.R. § 416.926(e)(2)(i).  An "extreme" limitation interferes very seriously
with a claimant's ability to independently sustain or complete activities.  20 C.F.R. § 416.926(e)(3)(i).

acquiring and using information; moving about and manipulating objects; and health and physical well-being.

(R. at 19-20).  The ALJ determined Claimant had "less than marked" limitations in the three remaining

domains of attending and completing tasks, interacting and relating with others, and caring for himself.  Id.

The ALJ concluded from these findings that Claimant's impairments did not functionally equal a listed

impairment.  (R. at 20-21).

a.       Opinions of the Treating Physicians

Plaintiff is correct in pointing out that the evidence contains medical records of Claimant's treating

physicians include, *inter alia*, assessments evaluating Claimant's functional limitations.[2]  (See R. at 206,

213-230, 239-254).  These assessments contain the physicians' determinations of the level of severity of

Claimant's impairments in five separate areas of functioning, and contain severity determinations that are

favorable to Claimant.[3]

Dr. Hawkins was Claimant's treating psychologist from November 2001 until December 2002.

The Record contains treatment notes and forms related to Dr. Hawkins treatment of Claimant, including

an "Assessment of Limitations For A Child" completed by Dr. Hawkins on July 10, 2003. (R. at 239-243).

In this assessment, Dr. Hawkins reported the Claimant is "markedly limited" in two of the seven factors

---

[2] Dr. Hawkins and Dr. Main are clearly treating physicians, having seen and treated the Claimant on multiple occasions over a period of months.  In addition, the ALJ specifically refers to both Dr. Hawkins and Dr. Main as "treating" doctors in his decision.  (R. at 18).

[3] These assessment are presented in a "check box" format that also request additional information regarding explanations, comments, and other information from the evaluator concerning the severity of impairments "checked" in each category.  While the categories are organized slightly differently than the six functional domains identified in the regulations, the five categories are comprised of thirty (30) individual factors that collectively mirror the considerations required by the ALJ when evaluating the Claimant's impairments under the six functional domains.  The areas in question in this matter are more fully described below.

7

listed under a category titled "Social Functioning."  The two factors with this determination of severity are "ability to get along with parents, teachers, siblings, classmates, and neighbors" and "ability to respond appropriately to authority figures (teachers, coaches, employers)."  (R. at 239-43).  Dr. Hawkins also reports the Claimant is "markedly limited" in two of four factors listed under a category called "Concentration, Persistence or Pace."  The two factors are "ability to attend or sustain concentration on a task (such as playing, reading, or practicing a sport) without constant supervision and reminders from adults" and "ability to stay focused and not be distracted by others in close proximity." (Id.).

Psychiatrist, Dr. Bart Main began treating Claimant in the summer of 2003, and treated the Claimant for a few months.  The Record contains treatment notes and forms related to Dr. Main's treatment of Claimant, including an "Assessment of Limitations For A Child" completed by Dr. Main on August 15, 2003.  Counsel for  plaintiff submitted this document to the ALJ  post-hearing after a discussion of its potential relevance with the ALJ at the close of the hearing. (R. 250-254).

Dr. Main reported the Claimant is "markedly limited" in three of seven factors listed under a category titled "Cognition/ Communication."  The three factors with this determination of severity are "ability to learn, understand, and solve problems through intuition, perception and reasoning", "ability to apply acquired knowledge" and "ability to ask for help and be understood." (R. at 250-54).  Dr. Main reported the Claimant has "extreme limitations" in four of seven factors listed under "Social Functioning" including "ability to form and maintain relationships with others", "ability to respond appropriately to social situations", "ability to get along with parents, teachers, siblings, classmates, and neighbors," and "ability to respond appropriately to authority figures (teachers, coaches, employers)" (Id.).

Dr. Main reports the Claimant to have "extreme limitations" in two of the six factors listed under

8

the category called "Personal/Behavioral Functioning" including "ability to follow safety rules" and "ability to refrain from self-injurious behaviors (such as biting oneself, hitting oneself, or engaging in suicidal acts). (Id.).  Finally, Dr. Main reports Claimant is at least "markedly limited" in three of the four factors listed under "Concentration, Persistence or Pace" including "ability to attend or sustain concentration on a task (such as playing, reading, or practicing a sport) without constant supervision and reminders from adults", "ability to perform activity and to complete an activity within a reasonable period of time" and "ability to make simple decisions." (Id.).  Dr. Main indicates in handwritten notes on the assessment form that in two of these factors ("ability to attend or sustain concentration on a task (such as playing, reading, or practicing a sport) without constant supervision and reminders from adults" and "ability to make simple decisions sensibly") the Claimant has extreme limitations when he is not properly medicated.  (Id.).  Finally, Dr. Main noted that Claimant's impairments, as identified in the assessment, were "present despite medication and the lack of drug abuse."

This Court finds that these determination of the severity of Claimant's impairments are not medical opinions within the meaning of the regulations, but are instead, opinions regarding the application of the statute to the determination of the ultimate question of disability.  Determination of this ultimate question is a task assigned solely to the discretion of the Commissioner.  See Nelson,  946 F.2d at 1316.  (Application of the statute is a task assigned solely to the discretion of the Secretary).   Medical testimony is relevant in determining precisely what claimant's impairments are, but it is not conclusive as to the ultimate question concerning whether claimants impairments are so severe that he is considered disabled.  Id. at 1316-1317.  Under the applicable law, while a treating physician is entitled to a certain preference, statements concerning the ultimate issue of disability are not controlling.  (Id.).

9

b.      Substantial Evidence in the Six Functional Domains

Having found that these determination of severity by Claimant's treating physicians are not controlling, the Court next looks at the record to determine if there is substantial evidence to support the finding of the ALJ that Claimant's impairments or combination of impairments did not functionally equal a listing.  The Court further examines whether the treating physicians' favorable medical opinions of the Claimant's impairments are in conflict with other substantial evidence in the record, which would allow the ALJ to give less than significant weight to these favorable  treating opinions in making his ultimate determination regarding Claimant's disabilities.

The ALJ first considered the domain identified in the regulations as "Acquiring and Using Information."  In this domain, the ALJ considers how well the Claimant acquires or learns information, and how well he uses the information he has learned.  See 20 C.F.R.§ 416.926(g).  The record indicates Claimant has been diagnosed with ADHD.  (R. at 229).  The testifying medical expert opined the Claimant had no functional limitation in this domain. (R. at 335).

Evidence in the records indicates the Claimant has a full scale IQ score of 104, with an above verbal score of 110.  (R. at 163-164).  Claimant's teachers reported that he did well on tests, but did not do his daily work.  (R. at 162).  On an Intellectual Function test performed as part of a special education evaluation on Claimant in 2002, Claimant was reported to have strengths in long term retention of isolated facts, alertness to detail, among other things.  (R. at 164.)   When the ALJ asked the Claimant at the hearing if the reason he did not complete his homework assignments was because he "not interested", Claimant response was "pretty much."  (R. at 299). Claimant indicated he "sometimes" considers himself to be intelligent, and when asked if he thought he could get better grades if he applied himself more, he

10

answered "Yeah." (R. at 305.).  Dr. Hawkins reported that in his opinion, Claimant had no limitation in his "ability to learn, understand, and solve problems through intuition, perception and reasoning" or in his "ability to apply acquired knowledge."). (R. at 239-40).  The Court finds substantial evidence to support the ALJ's determination that Claimant has no limitations in this functional domain.

The second functional domain is "Attending and Completing tasks."  In this domain, the ALJ considers how well the Claimant is able to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities, and the ease with which he changes them. See 20 C.F.R. 416.926(h).  The medical expert testified that when Claimant consistently takes his medication, he has a less than marked limitation in his ability to concentrate and attend to tasks.  (R. 335).

The evidence in the records includes a progress note by a nurse treating Claimant in September 2002, and managing his medications.  The progress note states that following a medication change, Claimant "started school at Oakland Jr. High this week. Reports he can concentrate & actually likes most of his teachers. Mood is improved."  (R. at 214).  Dr. Hawkins opined that Claimant had less than marked limitations in his "ability to perform and to complete an activity within a reasonable amount of time." (R. at 243).  Claimant testified at the hearing that "[i]f I sat down and worked on it [school work], I think I'd be able to get some done." (R. at 309).  The Court finds substantial evidence to support the ALJ's determination that Claimant has less than marked limitations in this functional domain.

The next functional domain is "Interacting and Relating with Others." Here, the ALJ considers how well the Claimant initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes

11

care of the possessions of others.  See 20 C.F.R. § 416.926(i).  The medical expert testified that while

Claimant has anger outbursts that alienate others, he is generally able to establish relationships and has

friends.  The medical expert opined the Claimant has less than marked impairments in this domain.

While some evidence in the record supports the notion that the Claimant has few friends (R. at

162), the Claimant's own testimony at the hearing supports the medical expert's testimony.  Claimant stated

at the hearing that he has friends at school and near his home. (R. at 299-30).  A progress note written by

his treating nurse states the Claimant "started school ... and actually likes most of his teachers."  (R. 214).

In "Student Activities Questionnaires" submitted by Claimant's teachers in December 2001 at the request

of an Agency disability examiner during the initial investigation into Claimant's application for supplemental

income benefits, several teachers reported Claimant's general ability to get along with his peers and

teachers.  (R. at 87, 91, and 93).  One teacher stated Claimant was "pleasant, congenial and respectful"

in response to this inquiry. (R. at 85).  In addition, despite noting the Claimant has "rage attacks" and

"impulsive emotional outbursts", Dr. Hawkins indicated that in his opinion the Claimant has no limitation

on his ability "to form and maintain relationships with others", or on his "ability to be aware of the feelings

towards others", and has less than marked limitation on his "ability to respond appropriately to authority

figures" and on his "ability to cooperate with others." (R. at 240-41).  The Court finds substantial evidence

to support the ALJ's determination that Claimant has less than marked limitations in this functional domain.

The fourth domain is "Moving About and Manipulating Objects."   In this domain, the ALJ

considers how the Claimant moves his body from one place to another and how he moves and manipulates

things.  See 20 C.F.R.§ 416.926(j).  Plaintiff raises no dispute regarding the ALJ's finding that Claimant

has no limitation in this domain.

The next fifth functional domain is "Caring for Yourself."   Here the ALJ considers how well Claimant  maintains a healthy emotional and physical state, how well Claimant get his physical and emotional wants and needs met in appropriate ways, and how he copes with stress and changes in his environment.  The ALJ also considers whether Claimant takes care of his own health, possessions, and living area. 20 C.F.R. 416.926(k).  The ALJ noted that the Claimant is capable of self grooming, but needs reminders.  (R. at 20).  The medical examiner testified that she found there to be some periods of self-neglect, and, therefore, gave a rating of less than marked limitation. (R. at 336).

The evidence in the record indicates that several of Claimants teachers during the 2001 school rated his "hygiene and self-care" as "appropriate" and "Ok."  (R. at 85, 87, 91,95).  Dr. Hawkins opined Claimant has no limitation in his "ability to help oneself and cooperate with taking care of personal needs: feeding dressing, toileting, and bathing" or in his "ability to maintain personal hygiene with age-appropriate supervision."  (R. at 242). Plaintiffs points to an episode involving Claimants swallowing a straight pin as evidence of his risky and self-harming behaviors.  However, the additional medical records provided by Plaintiff to the Appeals Council clearly indicate that this was an accidental and isolated incident.  (R. at 272-73).  An examination report by Dr. Daniel Stein dated May 22, 2002, indicats that while Claimant "does have extensive writing on his arms from markers" and that Claimant shows evidence of picking at his callouses and scabs, "there is no sign of significant injury." (R. at 205).  The Court finds substantial evidence to support the ALJ's determination that Claimant has less than marked limitations in this functional domain.

The final domain in the ALJ's analysis of functional equivalence is "Health and Physical Well-Being."  In this domain,  the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the Claimant's functioning is considered.  See 20 C.F.R. 416.926(l).

13

The ALJ determined that the Claimant needs to take his prescribed medications, and that on his current medications, Claimant was doing better and feeling happier.  (R. 20).

The evidence in the record includes a "Psychiatric Intake Evaluation" completed in August, 2002, in which Claimant's nurse notes the Claimant has "significant insight into the nature of his difficulties; however, he candidly stated that he does not like to take his medication." (R. at 216).  The evaluation continues stating the Claimant "reports that the Zoloft has been somewhat effective in helping him with his mood, and he has made a concerted effort not to get into physical altercations with his stepfather." (R. at 217).  The nurse indicates that Claimant's current dosage of Adderall is not sufficient to treat his ADHD symptoms and orders an increase in the dosage.  (R. at 218.).  In a  September 2002, medication management follow-up report, the same treating nurse states the Claimant

> [r]eports he can concentrate & actually likes most of his teachers. Mood is improved. Has had better frustration tolerance. Some appetite suppression initially on Adderal (unintelligible)  but reports improvement in appetite.  Some risky behavior on his skateboard. Denies suicidal ideation or intent.  Some problems getting along with his brother, but they don't live in the same household full time. Sleep habits have been skewed during the summer so very tired for first day of school. Will take several days to change patterns.  Affect was bright - mood euthymic.[4]  Plan - continue Zoloft ... and Adderall ... See back with Dr. Main in 2 months.

 (R. at 214).  At the hearing, the Claimant testified that he is taking both Adderal and Zoloft every morning and Seroquel each night.  (R. at 301).  When asked by the ALJ if he is sleeping okay with the Seroquel, the Claimant answered "Yeah." (Id.).  When asked by the ALJ if he has noticed any change over the past year with the change in medication, the Claimant answered "Yeah." (Id.).  The ALJ then asked "What changed?", to which the Claimant answered "I've been happy more." (Id.).

---

[4]Joyful, tranquil.  Moderate mood.

Accordingly, the Court finds substantial evidence to support the ALJ's determination that Claimant has less than marked limitations in this functional domain.

The Court has included an examination of the opinions of treating physicians Dr. Hawkins and Dr. Main as part of its analysis of the substantial evidence supporting the ALJ's functional impairments determinations. As the Court has indicated in the discussion above, many of Dr. Hawkins' observations of the Claimant are consistent with other evidence contained therein. It is, in reality, the ultimate conclusions of Dr. Hawkins regarding the severity of Claimant's impairments that create the conflict between his opinions and various other sources in the record. And, as the Court has already discussed, this ultimate determination is left solely to the discretion of the Commissioner. The Court cannot say the same about the opinions of Dr. Main regarding the extremeness of the Claimant's impairments or the presence of extreme impairments despite the Claimant's use of medication and abstinence from drug use. The Court finds in the record substantial evidence that is in conflict with Dr. Main's opinions. Consequently, this Court finds the ALJ did not commit reversible error if he chose to limit the weight of the medical opinions of Dr. Main.

From its examination and analysis of the evidence in the record, the Court finds substantial evidence exists from both treating and non-treating sources to support the ALJ's determination that the Claimant does not functionally equal any of the impairments listed in the Listing of Impairments, and, therefore also supports his determination that the Claimant has not been under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision. The Court finds some of the opinions of Claimant's treating physicians to be in conflict with other substantial evidence in the record, and the ALJ, therefore, was not obligated to give those opinions any special weight or consideration. In sum, this Court

recommends that the Commissioner's determinations regarding the absence of disability under the Act be affirmed.

### C.      The ALJ's Failure to Explain

The Court's recommendation to affirm the disability determinations of the Commissioner does not end this Court's inquiry in the instant matter.  It has been said that an ALJ is not required to assign special weight to the source of an opinion when making final determinations reserved to the Commissioner, or give special weight to opinions of treating physicians that are in conflict with other substantial evidence in the record.  However, according to the Social Security Administrations internal policy ruling SSR 99-5p, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." Soc. Sec. R. 96-5p, 1996 WL 374183, at *3.  If an ALJ limits the weight of a treating physician's opinion, the ALJ "must always give good reasons for the particular weight given to a treating physician's evaluation." Prosch, 201 F.3d at 1013; see also 20 C.F.R. § 416.927(d)(2).  In its own internal policy ruling, the Social Security Administration states

> the adjudicator will always give good reason in the notice of the determination or decision for the weight given to a treating source's medical opinion(s), i.e an opinion(s) on the nature and severity of an individual's impairment(s).  Therefore:
>
> When the determination or decision:
>
> - is not fully favorable, e.g., is a denial; or ...
>
> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Soc. Sec. R. 96-5p, 1996 WL 374188, at *5.

As the Court noted above, the final question of disability is expressly reserved to the Commissioner. See 20 C.F.R. § § 416.927(e).  However, reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's specific findings of disability, but it does not exempt the administrative decision makers from their obligation under § 416.927(d)(2) to explain why a treating physician's opinions are not being credited.  Cf. Snell v. Apfel, 177 F.3d 128, 134 (2nd Cir. 1999).  In the case of  Snell v. Apfel, the Court of Appeal for the Second Circuit adeptly explained the rational for this requirement when it said:

> The requirement of reason-giving exists, in part, to let Claimants understand the disposition of their cases, even -- and perhaps especially -- when those dispositions are unfavorable.  A Claimant like Snell, who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. See Jerry L. Mashaw, Due Process in the Administrative State 175-76 (1985).  Snell is not entitled to have Dr. Cooley's opinion on the ultimate question of disability be treated as controlling, but she is entitled to be told why the Commissioner has decided -- as under appropriate circumstances is his right-to disagree with Dr. Cooley.

177 F.3d at 134.

The decision  of the ALJ in the instant case fails to properly provide Ms. White and her son adequate explanation for the determination that Claimant was not disabled despite the indications from Claimant's treating physicians that he is disabled. A review of the ALJ's decision shows that it includes factual references to both Dr. Hawkins and Dr. Main findings and the diagnoses of the Claimant, but lacks any explanation of the ALJ's consideration, if any, given to the opinions of Dr. Hawkins and Dr, Main.

The ALJ notes that Dr. Hawkins "reported in June 2002 that the Claimant had current diagnoses of ADHD, combined type with a rule out of mood disorder, not otherwise specified." (R. at 18).  The ALJ further states that "Dr. Hawkins reported in July 2003 that Adderal improved functional abilities of

Claimant. He provided less than marked and some marked limitations in the various areas of functioning."

(Id.).

The ALJ's decision references Dr. Main's opinions by stating:

Treating physician Bart Main, M.D., reported in April 2003 that the Claimant continued to see himself as somewhat depressed but manageable on Zoloft. ... In July 2003, the Claimant told Dr. Main that he was not using any alcohol or illegal substances and was not taking any medication. Dr. Main reported in August 2003 diagnoses of bipolar affective disorder and ADD despite medication and in the absence of drug abuse. However, concentration, persistence and pace limitations were better with medication. (R. at 18-19).

These references to Dr. Hawkins and Dr. Main are insufficient to meet the obligations of the ALJ under the regulations. The Plaintiff and Claimant in this case are entitled to an explanation regarding the ALJ's consideration of Claimant's treating physician's opinions. Respondent fills numerous pages of her Motion for Summary Judgement with alleged factual inconsistencies and explanations for the ALJ's rejection of Dr. Hawkins' and Dr. Main's medical opinions included in the record. See Respondent's Motion for Summary Judgment at 25-39. However, a reviewing court "may not accept appellate counsel's post hoc rationalizations for agency action." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962).

Accordingly, this Court recommends that the matter be remanded to the Commissioner with an order that the ALJ provide the required explanation of his consideration of the opinions of Dr. Hawkins and Dr. Main in determining whether Claimant had a functional impairment under the regulations, and whether the Claimant was disabled within the meaning of the Social Security Act.

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

18

**HEREBY RECOMMENDED**:

      (1)     Plaintiff's Motion for Summary Judgment (Doc. No. 9) should be **DENIED.**

      (2)     Defendant Commissioner's Motion for Summary Judgment (Doc. No. 12)

should be **GRANTED, but with REMAND**, to the Commissioner who should be ordered to direct

the Administrative Law Judge to provide the required explanation of his consideration of the opinions of

Dr. Hawkins and Dr. Main in determining whether Claimant had a functional impairment under the

regulations, and whether the Claimant was disabled within the meaning of the Social Security Act, as

required under the regulations and the Social Security Administration's own internal policies.

Dated: January 19, 2006.

                                s/Jeanne J. Graham

                                JEANNE J. GRAHAM
                                United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing
and serving specific, written objections by February 8, 2006. A party may respond to the objections
within ten days after service thereof. Any objections or responses filed under this rule shall not exceed
3,500 words. A District Judge shall make a de novo determination of those portions to which
objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting
party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the
parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a
transcript of the hearing in order to resolve all objections made to this Report and Recommendation,
the party making the objections shall timely order and cause to be filed within ten days a complete
transcript of the hearing.